1

1   IN THE UNITED STATES DISTRICT COURT
    FOR THE NORTHERN DISTRICT OF ILLINOIS
2   EASTERN DIVISION

3   UNITED STATES OF AMERICA,              )
                                           )
4              Plaintiff,                  )
                                           )
5              v.                          )   No. 21 CR 00129
                                           )
6   DAVEY HINES,                           )   Chicago, Illinois
                                           )   March 11, 2021
7              Defendant.                  )   3:03 p.m.

8              TRANSCRIPT OF TELEPHONIC PROCEEDINGS

9          BEFORE THE HONORABLE M. DAVID WEISMAN

10  APPEARANCES TELEPHONICALLY:

11  For the Plaintiff:        HON. JOHN R. LAUSCH, JR.
                              United States Attorney
12                            BY:  MS. PAIGE NUTINI
                                   MS. SHY JACKSON
13                            Assistant United States Attorney
                              219 South Dearborn Street, Suite 500
14                            Chicago, Illinois 60604
                              (312) 353-5300
15                            paige.nutini@usdoj.gov
                              shy.jackson@usdoj.gov
16
    For the Defendant:        BEDI & SINGER, LLP
17                            BY:  MS. DENA M. SINGER
                              53 West Jackson Boulevard
18                            Suite 1505
                              Chicago, Illinois 60604
19                            (312) 525-2017
                              dsinger@bedisinger.com
20

21  Court Reporter:           Judith A. Walsh, CSR, RDR, F/CRR
                              Official Court Reporter
22                            219 South Dearborn Street, Room 2118
                              Chicago, Illinois 60604
23                            (312) 702-8865
                              judith_walsh@ilnd.uscourts.gov
24

25

1    (Proceedings heard telephonically:)

2         THE CLERK:  21 CR 129-1, USA versus Davey Hines.

3         THE COURT:  Good afternoon.  For the United States?

4         MS. NUTINI:  Good afternoon, your Honor.  Paige

5    Nutini and Shy Jackson on behalf of the United States.

6         THE COURT:  Good afternoon.

7         For the defendant?

8         MS. SINGER:  Good afternoon, your Honor.  Dena Singer

9    on behalf of Davey Jones -- Davey Hines who is on the phone as

10   well.

11        THE COURT:  Good afternoon, Ms. Singer.

12        Good afternoon, Mr. Hines.  Can you hear me okay,

13   sir?

14        THE DEFENDANT:  Good afternoon, sir.  Yes, I can hear

15   you, sir.

16        THE COURT:  All right.  We're here for a continued

17   detention hearing.  I had asked the parties to brief the issue

18   of whether the Court could consider danger to the community in

19   making a decision regard detention when the proffered basis

20   was an (f)(2) as opposed to an (f)(1) reason.  Additionally

21   related to that is whether financial danger to the community

22   is a basis for detention.

23        I've looked at the parties' briefing.  And Ms. Singer

24   responded at docket 83.  I've looked at hers.  I think the

25   status of the law is up in the air.  Ms. Singer points out

1    that the Seventh Circuit -- or I apologize.  The government

2    points out that the Seventh Circuit has not weighed in on this

3    issue.  Ms. Singer points to several circuit cases that

4    suggest that the government's approach is not consistent with

5    the statute.  The government relies on district court cases

6    that do allow the Court to consider danger to the community

7    even though serious risk of flight was the offered basis of

8    the detention hearing.

9            I've reviewed those.  I don't know that I need to

10   decide that issue to decide the issue of release or detention

11   in this case.  We'll see where we go on that.

12           Ms. Nutini, are you ready to proceed with argument?

13           MS. NUTINI:  Yes, your Honor.  The government is

14   ready to proceed.  And just to clarify, would your Honor like

15   the government to go over the (g)(4) factor in its argument --

16           THE COURT:  Yes, please.

17           MS. NUTINI:  -- regarding danger?

18           Okay.  Are you ready now?

19           THE COURT:  I am.

20           MS. NUTINI:  Okay.  Thank you.  Your Honor, the

21   government filed its brief as outlined at docket No. 73.  I'm

22   not going to repeat the filing, but I would like to give your

23   Honor a summary of the 3142(g) factors that your Honor is

24   required to consider in determining whether to detain the

25   defendant.

1           First, your Honor, regarding the nature and

2   circumstances of the offense and the weight of the evidence

3   against the defendant in favor of detention, Mr. Hines is

4   charged as the lead defendant in a 20-count indictment which

5   charges him with conspiring with ten other co-defendants over

6   the course of more than a year to steal victims' financial

7   instruments and victims' personal identifying information, or

8   PII, to make extensive fraudulent purchases.  The charges are

9   serious against the defendant, and they include four counts of

10  aggravated identity theft.

11          The strength of the evidence additionally, your

12  Honor, as laid out in the government's brief is very strong.

13  The case includes Title III interceptions over Snapchat and

14  multiple search warrants on numerous phones, among other

15  things.  The government has numerous communications that the

16  defendant had with his co-defendants and also had video

17  surveillance of the defendant and his co-defendants using

18  fraudulent credit cards.

19          Your Honor, the history and characteristics of the

20  defendant also strongly favor detention and point especially

21  to why the defendant presents a risk of nonappearance that

22  cannot be addressed with pretrial conditions of release.

23          Your Honor, the defendant -- as outlined in the

24  Pretrial Services report and in the government's motion in

25  support of detention, the defendant has bond forfeitures, bail

1    bond violations, electronic monitoring violations, violations

2    of supervision in state court, numerous violations of

3    supervised release in federal court, failures to show up in

4    court from both state and federal court, and multiple failures

5    to successfully complete a term of supervision or probation.

6    The defendant has repeatedly, almost too many times to count,

7    violated the terms of both pre- and post-conviction court

8    supervision, most commonly committing new crimes.  And these

9    violations make him a serious risk of nonappearance.

10           And, your Honor, by way of example, after the

11   defendant convicted -- was convicted of bank fraud by Judge

12   Kennelly in this district and ordered to a five-year term of

13   supervised release, U.S. Probation filed seven violation

14   reports seeking revocation of the defendant's supervised

15   release.  Six of those reports involved new arrests.  And

16   ultimately, Judge Kennelly revoked the defendant's supervised

17   release before terminating it unsatisfactorily in November of

18   2019 after the defendant was convicted of identity theft in

19   Cook County.

20           And, your Honor, while these crimes committed

21   themselves -- to be clear, the government is not arguing that

22   the defendant is necessarily going to jump on a plane and flee

23   out of the country tomorrow but, your Honor, the government's

24   not required to make that showing.  The standard is that the

25   government need only prove by a preponderance of the evidence

1   whether no condition or combination of conditions will

2   reasonably assure the appearance of the person as required.

3   And the government would submit that they have done that with

4   respect to defendant's flight risk.

5       Regarding defendant's danger to the community, your

6   Honor, under 3142(g)(4), if the defendant's background shows

7   us anything, it's that he's going to continue to commit crimes

8   if he is released.  Over the past ten years, after being given

9   numerous opportunities to turn his life around including by

10  this very court in front of Judge Kennelly, Mr. Hines has

11  continued to commit crime after crime.  He's been convicted of

12  four felonies in the past ten years, one misdemeanor, and has

13  had nine other arrests unrelated to these convictions.

14      The defendant is dangerous to the community in both

15  the economic sense given the victim credit cards he's stolen

16  and the PII that he's publicly disseminated, but he's also

17  dangerous to the community on the more traditional sense given

18  he has an aggravated assault conviction, he has a DUI arrest,

19  and he has a reckless driving and fleeing officer arrest.

20      Your Honor, the defendant has established over the

21  past ten years that no law or court-imposed condition will

22  deter him from committing crimes unless he is physically

23  incarcerated.  And for these reasons, your Honor, the

24  government moves to detain defendant on both the grounds that

25  he is a risk of nonappearance and on the grounds that he's a

1    danger to the community.

2         THE COURT:  So, Ms. Nutini, last night when I was

3    going through the defendant's extensive background, I was

4    trying to place chronologically where the charged conduct fits

5    within the state charges that the defendant was facing as well

6    as the supervised release while under Judge Kennelly's

7    supervision.

8         Where does the conduct alleged in the indictment fit

9    within those timeframes?

10        MS. NUTINI:  Your Honor, the defendant was committing

11   the alleged conspiracy, the crimes that are charged, while he

12   was on supervised release.

13        THE COURT:  With Judge Kennelly?

14        MS. NUTINI:  The -- yes, your Honor.  The conspiracy

15   date starts June of 2018.  And as your Honor can see from the

16   Pretrial Services report, supervised release in front of Judge

17   Kennelly was not terminated unsatisfactorily until November of

18   2019.

19        THE COURT:  Okay.  All right.  Ms. Singer?

20        MS. SINGER:  Thank you.  Thank you, your Honor.  Your

21   Honor, first of all, if we're here for this detention

22   hearing and, your Honor, we are arguing both whether or not

23   detention is appropriate and that he's a serious risk of

24   flight as well as a danger to the community, he is not either

25   of those things.  We've submitted our brief, your Honor,

1   regarding that we believe this Court can only consider the

2   factor of serious risk of flight.  But as the Court has

3   indicated during this hearing, I will address both.

4          First, your Honor, as to the government's argument

5   regarding the nature and circumstances of the offense under

6   3142(g) factors, it is the least -- it is the factor that the

7   Court is to place the least emphasis on.  Applying a heavy

8   weight to this is akin to applying a presumption of guilt

9   which is forbidden under 3142.  This Court is aware of that.

10  And while it is a factor, it is a least important factor.

11         The government continuously says in their motion that

12  he is the lead defendant, he is the -- they say it all over

13  their motion and said it again today.  There is nothing in the

14  statute that says a lead defendant cannot be on -- cannot be

15  released.  There's nothing in the statute that says a lead

16  defendant must be detained.  And Davey Hines is not an

17  individual that needs to be detained.

18         The government argued that Davey is a flight risk.

19  It is not just a flight risk that this court has to consider.

20  It is whether he is a serious flight risk.  And they cannot

21  sustain their burden that he is a serious flight risk or even

22  come close to it.  Just as a basis, he has no passport, strong

23  ties to the area, family in the area, a significant other in

24  the northern district who is pregnant, and comes to court.

25         The government cites and filed under seal the seven

1 violations that they -- that were filed in his supervised

2 release case.  Not one of those violations indicate that he

3 didn't come to court or didn't come -- didn't make contact

4 with his probation officer.

5        THE COURT:  Well, hold on, Ms. Singer.  They do show

6 he is violating location monitoring, and when he's made aware

7 of it, he doesn't comply.

8        MS. SINGER:  Well, several of those indicate, your

9 Honor -- and I do have them all listed out, and I can go one

10 by one for the Court.  If there is a location monitoring

11 violation and they made contact with him, he answers the

12 phone, he answers their text messages and ultimately, he goes

13 home.  So he's not --

14        THE COURT:  I agree -- I agree with that.  It does

15 not show compliance.  It shows that he, you know, eventually

16 has to find his way home which is not --

17        MS. SINGER:  But he goes home.

18        THE COURT:  All right.

19        MS. SINGER:  He doesn't -- he doesn't run from them.

20 He doesn't avoid making contact with his probation officer.

21 None of the violation reports indicate that he failed to keep

22 in contact.  All of the reports indicate they know where he

23 lives.  All of the reports indicate they've been able to

24 communicate with him.

25        THE COURT:  Yes, I would disagree.  There's at least

1    one where the probation officer repeatedly tries to contact

2    him and does not -- is not able to, but continue.

3              MS. SINGER:  Thank you.

4              There's not a single violation, however, your Honor,

5    that indicates he did not come to court.  Exhibit 1 that's

6    filed under seal, your Honor, talks about that he kept in

7    contact with his PO.

8              Now, the government also cites to other cases and

9    discusses in their motion as well as here today that he is

10   this flight risk with bond forfeiture warrant.  In a matter in

11   Kankakee on September 13th of 2017 when he was arrested, he

12   appeared in court each and every time that case was up.  One

13   time when his lawyer couldn't even appear, specifically, on

14   February 27th of 2018, he appeared.  There were almost nine

15   court appearances on that matter.  He appeared each and every

16   time.  Not one bond forfeiture warrant was ever filed.  There

17   was nothing in that case that indicates he did not appear in

18   court, tried to flee.

19             There's also a violation where they -- where the

20   government --

21             THE COURT:  Ms. Singer, can I interrupt you?

22             MS. SINGER:  Yes, your Honor.

23             THE COURT:  Was he on location monitoring during that

24   time on the federal case?

25             MS. SINGER:  That was a -- let me check, your Honor.

1    So that one is in '17.  That was a 2017 arrest, your Honor.

2    So location monitoring was placed on him.  According to

3    Probation, it was included.  Conditions were modified

4    according to Pretrial on October of '17.  So he may have been

5    on location monitoring on that time, your Honor.

6            THE COURT:  All right.

7            MS. SINGER:  And then there was -- in addition, your

8    Honor -- if I could have one moment, Judge.

9            THE COURT:  Sure.

10           MS. SINGER:  Thanks.

11       (Pause.)

12           MS. SINGER:  The charges that the government brought

13   up in their argument indicating that he had a -- they were

14   arguing about his, quote, unquote, danger to the community as

15   they see it, they talked about a DUI and a reckless arrest.

16   Both of those arrests were dismissed, and they are arrests

17   only.

18           He -- I think the most telling, your Honor, and we

19   did argue this in our motion as well as showing that he is not

20   a serious risk of flight is on his state court case, when the

21   judge found him guilty, did not revoke his bond, and he came

22   back to court knowing that he was facing incarceration.  That

23   shows the exact opposite of someone that is a flight risk.  It

24   shows an exact opposite of someone who is --

25           THE COURT:  Ms. Singer, so let's -- let's talk about

1  that.  I think that's a legitimate point.  If the tables were

2  turned and you had a client who had many other factors

3  favoring release but had -- did have a problem with bond

4  forfeitures, not appearing in state court proceedings, and

5  warrants having to be issued, I think you would say, because

6  defense attorneys say this correctly, that's only one factor

7  for the Court to consider, understanding that there -- the

8  Court should be trying to fashion conditions that allow the

9  defendant to be released.  I acknowledge that.  And when I say

10  "put it to the side," I don't mean I should ignore it.

11         But why does that calculus not apply here?  It is a

12  valid point.  He did appear in state court.  But that's about

13  the only thing that he has going in his favor as far as I can

14  tell.  Why should that control my decision?

15         MS. SINGER:  Well, your Honor, in order for the

16  government to meet their burden of showing that he's a flight

17  risk, this shows -- it's not the only factor, but even if you

18  take it that it is, that based -- that in and of itself is --

19         THE COURT:  Well, no, no.  I don't think it's the

20  only factor.  I have to look at all of them.  You have

21  correctly homed in on that circumstance or set of facts that

22  he regularly appeared in state court.  I don't understand why

23  that answers a question of whether he's a serious risk of

24  flight or not.

25         MS. SINGER:  How the factor of him returning to court

1   shows that?

2       THE COURT:  Yeah, because the converse is certainly

3   not true either.  If a defendant fails to appear in a state

4   court proceeding repeatedly, defense counsel normally says,

5   "Judge, you need to look at all of these factors, not just

6   that factor," and that's correct.  I don't know why it's not

7   equally correct when that one factor favors the defendant and

8   all the other factors point in favor of detention.

9       MS. SINGER:  Well, your Honor, this in part goes back

10  to the issue that we briefed for the Court regarding whether

11  or not the Court is considering serious flight risk only or

12  serious flight risk and danger to the community.  But if we're

13  talking about the factors and the Court wants to consider all

14  the factors, the nature and circumstance is the least

15  important factor.

16      The history and characteristics of the defendant

17  incorporate the risk of nonappearance.  So and that's, in

18  essence, what we're talking about here, that it's the exact

19  opposite of the risks of nonappearance.

20      THE COURT:  Yes, I don't see them the same way.  I

21  don't -- I hear what you're saying.  I don't think you've

22  pointed to any argument or legal case that tells me regular

23  appearance in a particular state court proceeding should

24  control over other factors of 3142(g), and I don't think it

25  does control.  I just want to make sure, you know, you don't

1  have a case I'm not aware of.  Keep going.

2          MS. SINGER:  I don't have a case, your Honor, but it

3  also does, there are -- it shows, your Honor, that there are

4  ways to mitigate any risk of -- or I'm sorry, there are ways

5  to mitigate any concerns the Court has regarding release.

6  There are conditions in place that the Court could put.  I'm

7  not arguing to your Honor that this is the only factor, but

8  this is a factor for the Court to consider.  This is a factor

9  that shows that he's not a serious flight risk.

10         And what the Court is supposed to be considering

11  here, well, based on our filing, is just only the serious

12  flight risk, but if your Honor is considering both

13  dangerousness and serious flight risk, it completely mitigates

14  the flight risk and it shows that -- I mean, and there's a

15  third-party custodian that's willing and able.  There has been

16  nothing in Pretrial that says she's not a suitable third-party

17  custodian if your Honor wanted that condition put in place as

18  well.

19         THE COURT:  I didn't mean to interrupt your review of

20  3142(g).  I want you to finish that.  I do have some questions

21  about the third-party custodian.  Is there anything else about

22  3142(g) you want to argue?

23         MS. SINGER:  Yes, your Honor, if I could have one

24  moment.

25         THE COURT:  Sure.

1    MS. SINGER:  There are a couple things that I want to

2 address regarding the government's filing.  On the

3 government's Page 12, they indicate, of their -- let me get

4 the docket number, Judge.  It was the original 19-page -- I

5 think it's docket 73.

6    They indicate that Mr. Hines was convicted of a gun

7 offense.  According to the docket, that is incorrect.  He was

8 not convicted of a gun offense.  That charge was dismissed.

9 And they also cite to the fact that he was arrested for --

10 Judge, this is going to the danger to the community argument

11 that the government has argued, that he is not a danger to the

12 community and that there are conditions of release that your

13 Honor can put in place.

14    There are -- the Court is to look to release first,

15 your Honor.  The Court is not to look to detention first.

16 This is not an individual that needs to be detained regarding

17 flight risk or danger to the community.  The way that these

18 cases are occurring -- and your Honor asked the government

19 this about when this indictment occurred.  And the government

20 answered you that the alleged indictment times occurred while

21 he was on supervised release.  Well, the government gets to

22 choose when they charge cases.  And while these are only

23 allegations and as the Court --

24    THE COURT:  Wait, wait, wait.  Hold on.  Excuse me

25 for interrupting.

1       I'm asking when the indictment alleges the conduct

2  occurred, not when did the grand jury return the indictment.

3  Ms. Nutini indicated that the indictment covers a period of

4  June 2018 through some point thereafter including a time

5  period when he was on supervised release.

6       The government's evidence shows, based on the grand

7  jury indictment return, that he conducted the alleged illegal

8  conduct while on supervised release.  That is not a government

9  choice issue.  That's what the evidence shows.  I did not ask

10 when was the indictment returned.  That is in the

11 government's -- more in the government's control.  But go on.

12      MS. SINGER:  The government, they allege that the

13 alleged conduct occurred while he was on supervised release.

14 That's what they argued, your Honor, to your question.

15      THE COURT:  Yes.

16      MS. SINGER:  And the fact that these are allegations

17 only, the fact that the conduct that they allege that the

18 grand jury returned the indictment just recently, the

19 allegations are from a few years ago.  The actual acts are

20 from a few years ago even though the grand jury just returned

21 the indictment, is what I was arguing, your Honor.

22      There are conditions of release that your Honor can

23 put in place.  There are third-party custodians.  Your Honor

24 does have the option of putting him on location monitoring if

25 your Honor chooses.  Detention is the last resort, not the

1    first.  The State has not met their burden of detention, and

2    there is nothing that says that because a lead defendant is an

3    alleged lead defendant that you cannot release him, and we're

4    asking for release.

5           THE COURT:  All right.  As to your last point, I

6    agree completely.  The statute nor do I hear the government

7    argue that because he is the lead defendant, that justifies

8    detention.  I do hear the government arguing that based on the

9    weight of the evidence against him and the nature and

10   circumstances of the offense which are factors to be

11   considered, he should be detained, but I do not find that he

12   is first or 14th on the list influences or is a factor to be

13   considered.  I suppose marginally under the weight of the

14   evidence or the nature and circumstances, but that alone is

15   not.

16          Ms. Singer, let me return back to the issue of the

17   aggravated unlawful use of a weapon.  I'm looking at the

18   Pretrial Service report.

19          MS. SINGER:  Uh-huh.

20          THE COURT:  Page 6, I think, of 11.  This is an

21   arrest that occurred December 29th, 2012.  Tell me when

22   you're --

23          MS. SINGER:  Yes, your Honor.  I'm here, your Honor.

24          THE COURT:  Okay.  So it has Count 1, aggravated

25   assault, police officer.  Count 2, aggravated unlawful use of

1    a weapon, loaded gun, felony.  I'm going to go to the right

2    from the Pretrial Service report.  It says Counts 1 and 2,

3    guilty plea, guilty finding.  That suggests to me that he was

4    found guilty of aggravated assault of an officer, aggravated

5    unlawful use of a weapon.  Tell me why that's wrong.

6              MS. SINGER:  Judge, I can pull the docket if you give

7    me one moment and I can -- I can even send it by email to the

8    Court if need be.  If I could have one moment, your Honor.

9              THE COURT:  Sure.

10             MS. SINGER:  Thank you.

11        (Pause.)

12             MS. SINGER:  That case would be -- sorry, Judge.  One

13   second, if you could give me one moment.

14             So according to the state court clerk system, your

15   Honor, it says he pled guilty to agg assault and there was a

16   finding of guilty of the agg assault but that the agg UUW,

17   which is really Counts 5, 6, 7, 8, were nolled, which would be

18   that they were dismissed and that he was sentenced.

19             So I have counts -- Count 1 was the agg assault.

20   Count 2, agg assault.  Then the UUW, the unlawful use of a

21   weapon, which starts at Count 5 according to the clerk system.

22   And according to the docket from what I can see, your Honor,

23   Counts 5, 6 -- excuse me.  Yes, Counts 5, 6, 7, 8, were

24   dismissed.

25             THE COURT:  All right.  With due respect, I'm looking

1    at the Pretrial Service report that has similar but not the

2    same information.  And I am going to rely on the information

3    contained in the Pretrial Services report as opposed to a

4    summation of a document I cannot see.

5              MS. SINGER:  I can send it if the Court would like.

6              THE COURT:  Not at this time.

7              Let me ask you about the third-party custodian.  Have

8    you had contact with her?  Is she on the call?

9              MS. SINGER:  I believe she is on the call, yes --

10             THIRD-PARTY CUSTODIAN:  I am.

11             MS. SINGER:  -- for this court hearing.

12             THE COURT:  All right.  So in the Pretrial Service

13   report, it indicates that the proposed third-party custodian

14   is not willing to post property, but based on her background

15   including that she owns her home, I'm wondering why she's not

16   willing to post property.

17             THIRD-PARTY CUSTODIAN:  I'm -- my name --

18             THE COURT:  Hold on, ma'am.

19             THIRD-PARTY CUSTODIAN:  Yes.  I'm sorry.

20             THE COURT:  Hold on, ma'am.  I'm sorry.  Thank you

21   for being here.

22             Ms. Singer, do you want to answer for her, or do you

23   want me to just hear from her?

24             MS. SINGER:  I don't -- I would have to speak with

25   her.  I don't have an answer to that.  I don't have -- I don't

1  know the answer to that.

2         THE COURT:  All right.  Ma'am, go ahead then.

3         THIRD-PARTY CUSTODIAN:  I'm his aunt.  And I just

4  bought this home.  So, I mean, I can't put it up.  I've been

5  here for only three years.  So he knows I'm the aunt that, I

6  don't take anything.  So if he's here with me, he's here with

7  me.  He's going to abide by the rules.  And he knows I'm not

8  afraid to call the police and say he's not doing what he's

9  supposed to do.  This is me, and he knows that.  That's why I

10 allowed him to come here.

11        As far as putting up my home, I mean, I don't know

12 anything about that.  I don't have anything but this home.

13        THE COURT:  I appreciate that.  And let me, first of

14 all, thank you for being on the hearing, and thank you for

15 being willing to serve as a third-party custodian.  My concern

16 is that your nephew has a very, very sordid background.

17        THIRD-PARTY CUSTODIAN:  I understand, sir.

18        THE COURT:  And the reality is that if he violated

19 the conditions I placed him under, the government -- and you

20 posted property, the government could come after you for that

21 property.  If your decision, which is certainly your decision

22 to make, is that, "I don't want to put my property at risk," I

23 understand that.  That tells me something about your

24 confidence in your nephew's behavior.

25        If there's some other reason why you don't want to

1    post your property, that's fine too.  I would just like to

2    hear if there is another reason or if the reason is --

3             THIRD-PARTY CUSTODIAN:  It's just -- I'm sorry.

4             THE COURT:  Go ahead.

5             THIRD-PARTY CUSTODIAN:  I don't -- I don't cosign for

6    anyone.  Even my daughter, she wanted me to cosign for a car.

7    I just think it's something I don't do.

8             THE COURT:  Okay.  So there is another reason --

9             THIRD-PARTY CUSTODIAN:  That's all.  I mean, it's no

10   reason that, hey, if I had the money or whatever and -- he's

11   not a flight risk.  He's not going anywhere.  He's going to

12   abide by my rules because that's why he wants to come here

13   because he knows how I am.

14            THE COURT:  Okay.

15            THIRD-PARTY CUSTODIAN:  He's not going anywhere.

16   He's going to go to court.  He's going to be here when he's

17   supposed to, or I'm going to be out there telling him, "Get in

18   the house."  He knows me.

19            THE COURT:  All right.

20            THIRD-PARTY CUSTODIAN:  That's why he asked to come

21   here.

22            THE COURT:  Okay.  Thank you again for being here.  I

23   appreciate your candor, and I appreciate that you -- the

24   reason you're not willing to post property has nothing to do

25   with Mr. Hines but it has to do with --

1          THIRD-PARTY CUSTODIAN:  No --

2          THE COURT:  -- your willingness to post property in

3     general.

4          THIRD-PARTY CUSTODIAN:  -- it has nothing to do with

5     him at all, nothing.

6          THE COURT:  All right.  Thank you very much.

7          THIRD-PARTY CUSTODIAN:  You're welcome.

8          THE COURT:  Thank you.

9          All right.  I am going to order Mr. Hines detained.

10    I find the following factors control the decision.  I will

11    issue a written order as well.  First, the nature and

12    circumstances of the offense charged, my main concern --

13    although this is not a statutorily identified offense that

14    favors detention, my main concern is that Mr. Hines has shown

15    a repeated ability even while under probation supervision to

16    conduct criminal conduct that would allow him to abscond.

17         He is able to find and use other people's identifying

18    information based on the indictment.  He's able to convert

19    that information into financial means which would all allow

20    him to abscond and be able to live off detection from law

21    enforcement through normal means.

22         Second, the weight of the evidence against the

23    defendant is extremely high.  There is an indictment returned.

24    Beyond that, the evidence presented in the government's

25    filings is extensive.  The nature of the investigative tools

1    to charge a case is extensive, all suggesting that the weight

2    of the evidence against Mr. Hines is extensive.  I agree with

3    defense counsel, Ms. Singer, that that should be the least

4    controlling factor but it in this case strongly weighs in

5    favor of detention.

6            The history and characteristics of Mr. Hines, there's

7    not one that weighs in his favor.  Some strongly weigh in

8    favor of detention and some are neutral.  His character, he

9    has proven beyond question that he is unable to follow the

10   law, that he will lie.  The probation violation reports

11   include evidence where Mr. Hines, when confronted with

12   arrests, has explanations that are not consistent with police

13   reports.

14           His promise to Judge Kennelly during his elocution

15   when he was sentenced originally by Judge Kennelly was

16   complete pie in the sky.  He got out and within less than a

17   year was engaged in the same and worse conduct.  All those

18   prior behaviors show he is a person whose character is not to

19   be trusted.

20           His physical and mental condition are neutral.  His

21   family ties are neutral.  He has no meaningful employment

22   history.  That weighs strongly in favor of detention.

23           He has no financial resources.  My general view on

24   the lack of financial resources is that I don't use that as a

25   reason to detain someone because it would result in people

1    being detained because they're poor, and I don't think that's

2    what the law allows or intends.  However, in this case, I find

3    that his financial resources weigh in favor of detention

4    because Mr. Hines is not willing to work to earn money.  What

5    Mr. Hines apparently likes to do based on his prior

6    convictions and the current charges is to use other people's

7    credit creating havoc for them and live off of those means.

8    And, therefore, instead of finding a job like the rest of us,

9    Mr. Hines has continued and repeatedly chosen criminal conduct

10   that adversely affects probably the least able to defend

11   themselves, individuals, for his own benefit.  Therefore, his

12   lack of financial resources I find will encourage him to do

13   the same.

14           Based on his prior history, his length of residence

15   in the community is neutral.  The fact is, he has been a

16   lifelong resident of the district, but he has spent much of

17   that adult lifetime in custody or on some form of supervision.

18           His community ties are neutral.  His past conduct

19   relating to drug or alcohol abuse is neutral.  His criminal

20   history weighs strongly in favor of detention.

21           His record concerning appearance at court proceedings

22   does weigh in favor of release as to that state court case but

23   taken in totality weighs in favor of detention because his

24   ability to comply with conditions of release in other

25   circumstances trumps his appearance in state court

1   proceedings.

2          Under 3142(g)(3)(B), I'm also to consider whether at

3   the time of the current offense he was on probation, parole,

4   or other release pending that sentencing appeal or completion

5   of sentence.  As Ms. Nutini indicated and Ms. Singer

6   acknowledged, he was on supervised release on a federal case

7   with some of the tightest conditions of release while he was

8   engaged in the alleged conduct here.  That factor weighs

9   extremely strong in favor of detention.

10          The next factor is (g)(4), nature and seriousness of

11  the danger to any person or the community.  If I did not

12  consider that factor, I would still find Mr. Hines should be

13  detained.  If I do consider that factor, it brings in a whole

14  other host of reasons why he should be detained.

15          Mr. Hines, if you look through the probation

16  violation reports, not only does he engage while he's out on

17  supervised release in the exact conduct that he's charged with

18  here and the type of fraud that he was originally sentenced

19  for, he is doing it.  And on some of the cases, police

20  officers pull him over for, you know, trying to escape,

21  hitting a car, and in the vehicle with him are other credit

22  cards.

23          And those, based on -- it doesn't say that in those

24  cases, but we certainly know in the charged offense here by

25  stealing mail from people and using that personal identifying

1   information and those credit cards, he is creating a financial

2   danger to people who are unable to defend themselves against

3   that.  And unlike a large bank who has, you know, the

4   resources to defend themselves against the bank fraud or

5   pursue other relief, these are individuals whose credit

6   reports are compromised, whose -- who become targets for

7   collection agencies.

8          All sorts of things stem from this type of conduct

9   that Mr. Hines is charged with, and based on his violations

10  during supervised release, probably was engaged in at that

11  time.  And certainly based on his case before Judge Kennelly

12  had had concerns that he was doing the same then, that's what

13  he does.

14         And this court finds if he were released, there's no

15  reason he would stop.  He did this type of conduct while he

16  was being supervised by Judge Kennelly, while being supervised

17  by Probation on location monitoring.  And those individuals,

18  we don't know their names.  Their financial security is at

19  risk.  So if I were to consider, which I'm not, the nature and

20  seriousness of the danger to any person or the community, that

21  would be a separate and independent factor which would justify

22  his detention.

23         For those reasons, Mr. Hines, you will be held in

24  custody pending resolution of your charges.

25         Ms. Singer, do you want me to make a further record

1    of my findings?

2              MS. SINGER:  No, thank you.

3              THE COURT:  I'm sorry?

4              MS. SINGER:  No, thank you.

5              THE COURT:  Ms. Nutini, do you want me to make a

6    further record of my findings?

7              MS. NUTINI:  No.  Thank you, your Honor.

8              THE COURT:  All right.  The defendant is ordered

9    detained pending his appearance in the district court.

10             Anything further from the government?

11             MS. NUTINI:  No, your Honor.  Thank you.

12             THE COURT:  Ms. Singer, anything further?

13             MS. SINGER:  No, your Honor.

14             THE COURT:  Thank you.

15         (Proceedings adjourned at 3:44 p.m.)

16                       * * * * * * *

17                   C E R T I F I C A T E

18         I, Judith A. Walsh, do hereby certify that the

19   foregoing is a complete, true, and accurate transcript of the

20   telephonic proceedings had in the above-entitled case before

21   the Honorable W. DAVID WEISMAN, one of the judges of said

22   court, at Chicago, Illinois, on March 11, 2021.

23   */s/ Judith A. Walsh, CSR, RDR, F/CRR*_____    March 17, 2021
     Official Court Reporter
24   United States District Court
     Northern District of Illinois
25   Eastern Division